**SO ORDERED: September 20, 2006.**



**Anthony J. Metz III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| HEATHER PEACHEE | ) | Case No. 05-14442-BHL-7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| FIDELITY NATIONAL TITLE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
|     Plaintiff, | ) | Adv. Pro. No. 05-504 |
| | ) | |
| vs. | ) | |
| | ) | |
| HEATHER PEACHEE | ) | |
| | ) | |
|     Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
## AND SUMMARY JUDGMENT IN FAVOR OF DEFENDANT

Fidelity National Title Insurance Company filed its Complaint to Determine

Nondischargeability of Debt on November 7, 2005.  Identical complaints were filed

against Scott Peachee and Tad Braner respectively in related adversary proceedings 05-503 and 05-505.  Although the three adversary proceedings have not been "consolidated", the facts and circumstances are identical to all three and therefore the Court will refer to all three defendants in this entry.

This matter came before the Court for hearing on August 9, 2006 upon the Motion for Summary Judgment filed by the Plaintiff, Fidelity National Title Insurance Company ("Fidelity") on May 1, 2006 and the Motion for Summary Judgment filed in their respective proceedings by the Defendants, Scott Peachee, Heather Peachee and Tad Braner (the "Defendants") on May 31, 2006.   Appearing for the Plaintiff at the August 9th hearing was Timothy Abeska; Kjell Engebretsen appeared for the Defendants.  The Court took ruling on the matter under advisement at the conclusion of the hearing.  The Plaintiff and the Defendants submitted their proposed findings of fact and conclusions of law on August 15th and August 24th respectively.  The Court now makes its findings and conclusions to the extent required by Fed. R. Bankr. P. 7052.

### *I.  Findings of Fact*

1.    On September 23, 1998, Fidelity entered into an Issuing Agency Agreement (the "Agency Agreement") with Patriot Title Co., Inc. ("Patriot, Inc."), a predecessor in interest to Patriot Title, LLC ("Patriot").  Under the Agency Agreement, Fidelity was the "Company" and Patriot was the "Agent".  The Agency Agreement contained paragraph 2 which was entitled "Responsibility of *Agent*"and set forth certain "affirmative covenants" by which *Patriot* was required to abide.  The affirmative covenant, paragraph 2(A)(8), provided that *Patriot* shall:

> Keep safely and segregated, in an FDIC insured escrow/ trust account which is subject to audit by Company, all monies that may be entrusted to Agent by Company, or others in the course of: (i) Agent's business operations; and (ii) the issuance of Company's Title Assurances hereunder. *Agent* shall exercise a *fiduciary duty* with respect to the owners of the funds so deposited. Agent shall be solely liable for any and all losses arising by reason of Agent's improper, unauthorized, reckless or premature disbursement of any escrowed funds.

(Emphasis added). Thus, in the Agency Agreement, *Patriot* expressly acknowledged that it assumed a fiduciary duty with respect to all funds entrusted to it by Fidelity.

2. During the course of an audit in February 2003, Fidelity discovered accounting irregularities in the accounts maintained by Patriot whereby Patriot failed to account for approximately 1.4 million dollars that had been entrusted to it.

3. In June 2003, representatives of Fidelity met with representatives of Patriot, including the Defendants, all of whom were at all relevant times officers, shareholders and members of Patriot.

4. During the meeting, the Defendants estimated that Patriot's escrow shortage was approximately $1.4 million.

5. As consideration for Fidelity agreeing not to terminate its relationship with Patriot, the Defendants executed personal guaranties of Patriot's performance under the Agency Agreement on June 30, 2003. The Defendants agreed to "unconditionally and absolutely guaranty (sic) to Fidelity...all obligations of Patriot under the terms of the Agency Agreement". The guaranty also provided that

[The Defendant] agrees to perform all of Patriot's obligations, including the payment of all amounts accruing in respect of Patriot's obligations under the Agency Agreement and all costs and expenses of Fidelity's enforcement of those obligations, including reasonable attorney and other legal fees, in like manner as if the obligations of Patriot constitute the direct, primary and sole obligations of [the Defendant] to Fidelity.

6.     Effective January 16, 2004 and pursuant to a letter providing notice of termination, Fidelity terminated its relationship with Patriot alleging Patriot's non-compliance with the terms of the Agency Agreement.  The letter provided, in part, that:

> Pursuant to paragraph 8(C)(i) of the Issuing Agency Agreement, that agreement is hereby terminated effective January 16, 2004 at 5:01 p.m. *as a result of the accounting and financial irregularities disclosed in prior audit or examination of your records.*

(Emphasis added).

7.     On July 15, 2004, Fidelity filed its Complaint ("Complaint") against  Patriot and the Defendants in the United States District Court for the Southern District of Indiana ("District Court") for the amounts owed to Fidelity.

8.     On June 2, 2005, the District Court granted Fidelity's motion for summary judgment and entered summary judgment (the "District Court Judgment") against Patriot and the Defendants in the amount of $981,534.46.  Of this amount, the District Court found that Fidelity paid: (1) $511,343.84 in claims as a result of Patriot's escrow shortages; (2) $223,733.00 in claims which were attributable to Patriot's acts of "negligence, mismanagement and carelessness"; (3) $150,015.00 in accounting fees; (4) $20,703.52 in attorney fees and expenses and (5) failed to remit premiums in the amount of $76,699.10.

9.    The District Court also found that "*Patriot* breached the Agreement and *its* fiduciary duties thereunder, and that the individual defendants are liable for *this breach* pursuant to the Guarantees".  In other words, the Court found that the Defendants were liable pursuant to their guaranties that they signed for *Patriot's breach* of its fiduciary duties. The District Court also found that, as a result of the audit conducted in February, 2003, Fidelity discovered several accounting irregularities, including:

> a failure to reconcile the Patriot escrow accounts, a failure to remit premiums owed to Fidelity in connection with transactions closed by Patriot, the lack of any internal controls over electronic funds transfers, a lack of any procedures for following - up on satisfaction of liens to be paid during closing transactions, failure to maintain copies of necessary documents in closing files, allowing checks to be returned for insufficient funds, violating the Agreement with respect to tax sale transactions, improper salary advances to one or more of the Defendants, excessive mistakes in calculating mortgage payoffs, and other failures.

10.    There were no findings that the Defendants personally committed fraud in their capacity as corporate employees, that they breached any fiduciary duties, or for that matter, that they owed a fiduciary duty to Fidelity. [1]

11.    On July 27, 2005, the Defendants filed for relief under Chapter 7 of the Bankruptcy Code.

12.    On November 7, 2005, Fidelity filed their complaint and commenced this adversary proceeding.

---

[1] On page 6 of Fidelity's amended proposed findings and conclusions, Fidelity states, "[B]y virtue of Defendants' control of Patriot, Defendants owed a fiduciary duty to Patriot, and consequently, Fidelity." The footnote to that sentence (footnote 7) reads "See Judgment Order" so as to lead the reader to believe that the District Court in its judgment found that the Defendants owed a fiduciary duty to Fidelity, yet the District Court made no such finding.

## II.  Conclusions of Law

1.   This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334(b).

2.   This adversary proceeding is a core proceeding pursuant to one or more subsections of 28 U.S.C. § 157(b).

3.   Under 28 U.S.C. §§ 1408 and 1409, this District is the proper venue for this adversary proceeding.

4.   Fidelity in its Complaint alleged that the debt owed by the Defendants is nondischargeable pursuant to §§523(a)(4) and (6).  However, in its proposed findings and conclusions, Fidelity asserts that the actions of the Defendants do not rise to the level of willful and malicious injury as so required by section 523(a)(6) of the Bankruptcy Code and applicable state law.  Thus, Fidelity relies on §523(a)(4) as the basis for nondischargeability.

### A.  Summary Judgment Standard

5.   Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgement as a matter of law."  Fed. R. Civ. P.56(c).

6.   The party moving for summary judgment bears the initial burden of demonstrating the basis for its motion, and identifying those portions of the

"pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits if any," which demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

7.  Once the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

8.  To determine whether summary judgment is appropriate, the Court must determine whether any genuine issue of material facts exists.  An issue is "material" only if the dispute "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986).

9.  An issue is "genuine" only if the evidence is such "that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

### B.  Nondischargeability under §523(a)(4)

10.  Exceptions to discharge under §523 are construed strictly against the creditor and liberally in favor of the debtor.  *In re Tsikouris*, 340 B.R. 604, 607-08 (Bankr. N. D. Ind. 2006).  Among the exceptions to discharge is §523(a)(4) which renders nondischargeable those debts resulting from fraud or defalcation while acting in a fiduciary capacity, or debts resulting from embezzlement or larceny.  Thus, there are alternate routes of recovery under this section: a debt is nondischargeable under this section if

the plaintiff can prove: (a) a fiduciary relationship existed between the debtor and the plaintiff and that the debt arose out of fraud or defalcation while acting in that fiduciary capacity *or* (b) the debt resulted from embezzlement or larceny.

11.    The basis for nondischargeability here can be narrowed since, in its proposed findings and conclusions, Fidelity asserted that the Defendants' actions did *not* rise to the level of embezzlement.  Nothing in the District Court Judgment or the Adversary Complaint alleges that the Defendants committed fraud or larceny.  So, what remains of §523(a)(4) upon which to find nondischargeability , as acknowledged by Plaintiff's counsel in the August 9th hearing, is that the Defendants committed defalcation while acting in a fiduciary capacity.  [2]

12.    In support of its theory, the Plaintiff alleges that  (1) *Patriot* committed a defalcation while acting as a fiduciary to Fidelity, and (2) by virtue of the guaranties executed by the Defendants, the Defendants likewise owed *Fidelity* a fiduciary duty.

---

[2] The following colloquy transpired in the August 9th hearing:

JUDGE METZ:  Do you believe that probably....I guess you saw the (a)(6) in there...I'm not sure how far that's going to go...buy anyway...

MR. ABESKA:   All it...all it takes is one and clearly in my mind defalcation is the strongest of the three.

JUDGE METZ:  So basically, to get there, I have to find that there was a fiduciary relationship that existed between the Debtors and Fidelity?

MR. ABESKA:  That's correct.

JUDGE METZ:  And without that, you're dead.  Right?

MR. ABESKA:   Correct.

### 1. Defalcation While Acting in a Fiduciary Capacity

13.     The "defalcation" element of §523(a)(4) involves less onerous conduct then

"fraud", as it can include misappropriation or failure to account for funds

entrusted to a fiduciary.  The fiduciary need not act in bad faith, as the

defalcation can occur whether the fiduciary's acts are intentional, willful,

reckless or negligent.  *See In re Storie*, 206 B.R. 283, 288 (B.A.P. 10th Cir.

1987) (citing *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510,

511-12 (2d Cir. 1937) (Hand, J.)). [3]

14.     The defalcation must be committed by the debtor while the debtor is acting

in a fiduciary capacity.  Whether a fiduciary or trust relationship exists

between the creditor and the debtor is a question of federal law.  State law

may be consulted as to whether a trust relationship is created, but it is

federal law that ultimately governs determinations of nondischargeability for

§523(a)(4) purposes.  *In re Guy*, 101 B.R. 961, 983 (Bankr. N. D. Ind.

1988).

15.     "Fiduciary" has a limited meaning under federal bankruptcy law and "not all

fiduciary relationships qualify" as the type of fiduciary relationship needed

for a nondischargeability finding under §523(a)(4).  For one, "the fiduciary's

obligation must exist prior to the alleged wrong", and also exist "without any

reference to the wrong and be independent of it".  *In re Frain*, 230 F.3d

1014, 1017 (7th Cir. 2000); See also, *Guy*, 101 B.R.at 983; *Tsikouris*, 340

---

[3] Courts are generally in agreement that "defalcation" includes intentional and reckless breaches of fiduciary duty.  But see, *Storie*, 216 B.R. at 288, for a discussion of the split in authority as to whether "defalcation" includes mere *negligent* breaches of fiduciary duty.  Because this Court finds, *infra*, that the Defendants were not "fiduciaries" for §523(a)(4) purposes, whether "negligent" acts are included in the meaning of "defalcation" is not relevant with respect to this opinion.

B.R. at 610. Thus, constructive trusts and trust relationships implied by law where the fiduciary duty is created *ex maleficio* (founded on the wrongdoing or tort) do not create a fiduciary duty for §523(a)(4) purposes even though they may create such duties under applicable state law. *Guy*, 101 B.R. at 983; *Frain*, 230 F.3d at 1017.

16. This narrower definition of "fiduciary" under the bankruptcy code, then, includes only express or technical trusts that existed between the debtor and the creditor *before* the alleged wrongdoing occurred. *Guy*, 101 B.R at 983.

### C. The Guaranties

17. Fidelity argues that the guaranties created the Defendants' fiduciary duty to Fidelity.   Under Indiana law, a guaranty is governed by the same rules applicable to other contracts.  A court must give effect to the intentions of the parties from the language of the contract in light of the surrounding circumstances. *Bruno v. Wells Fargo Bank, N.A.*, 850 N.E.2d 940, 945 (Ind. Ct. App.), citing *Kruse v. Nat'l Bank of Indianapolis*, 815 N.E.2d 137, 144 (Ind. Ct. App. 2004).  "[T]he terms of a guaranty should neither be so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor from liability within its terms." *Id*.  *See also, Hepburn v. Tri-County Bank*, 842 N.E.2d 378 (Ind. Ct. App. 2006) (guaranty secured by earlier-executed mortgages).

18. In construing a written instrument, the Indiana courts apply the "four corners" rule.  *See Ethyl Corp. v. Forcum-Lannom Assoc., Inc.*, 433 N.E.2d

1214 (Ind.App. 1982).  The "four corners" rule provides that when a court interprets a written document:

> The express language found within the four corners of the instrument, if unambiguous, determines the intent of the parties such that parol or extrinsic evidence is inadmissible to expand, vary or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence (defect in the formation of the contract).

*Id*. at 1217.  Further, "In deciding cases involving disputes over the meaning of written contracts, courts resort to the application of rules of construction and the receipt of extrinsic evidence only after their careful study of the entire contract itself has failed to make clear its meaning."  *Id*.

19.    The Defendants guaranteed "all *obligations* of Patriot under the terms of the Agency Agreement".  The responsibility of Patriot to segregate funds entrusted to it was contained under the "Affirmative Covenants" section of the Agency Agreement.  It is unclear under the Agency Agreement whether the performance of an *obligation* included the performance of an *affirmative covenant.*

20.    The fourth and fifth full paragraphs of the guaranties speak primarily in terms of the performance of obligations of *payment* of amounts owed by Patriot to Fidelity:

> [T]he *obligations* of Guarantor shall be continuing and shall continue, irrespective of any statue of limitations otherwise applicable, until all *amounts* guarantied hereunder *are paid in full* and all other *obligations* of Patriot to Fidelity under the Agency Agreement are satisfied.

> Guarantor agrees to perform all of Patriot's *obligations*, including the *payment* of all amounts accruing in respect of Patriot's *obligations* under the Agency Agreement and *all costs and expenses of*

> *Fidelity's enforcement of those obligations*, including reasonable attorney and other legal fees, in like manner as if the *obligations* of Patriot constitute the direct, primary and sole *obligations* of Guarantor to Fidelity.

21.   There is a genuine issue of material fact whether the guaranties are anything other than guaranties of payment, i.e., that which the Defendants guaranteed was payment of Patriot's debt to Fidelity, not the assumption of Patriot's fiduciary duties to Fidelity.  However, this distinction may be academic since the District Court Judgment found that whatever defalcation occurred with respect to the funds held by Patriot occurred prior to the February, 2003 audit.  The Defendants executed the guaranties four months later, on June 30, 2003.

22.   Given the fact that one must be a fiduciary under §523(a)(4) *before* the defalcation occurs, the guaranties here (if they indeed created fiduciary duties with respect to the Defendants), would have had to have been *retroactive* in nature for the Defendants' debts to be nondischargeable.  If such were the case, this would place the Defendants in the curious and somewhat absurd position of having breached the Agency Agreement and their fiduciary duties to Fidelity as of the moment they signed the guaranties.  The express language of the guaranties does not support the argument of such an *ex post facto* assumption of Patriot's fiduciary duties by the Defendants.

23.   The second full paragraph of the second page of the guaranty provides:

[N]otwithstanding the payment or performance by Guarantor of any obligations of Patriot, Guarantor shall not have the right of subrogation to

the rights of Fidelity against Patriot until Patriot shall have fully performed all of the *obligations and covenants* under the Agency Agreement.

This paragraph provides that the Defendants cannot exercise their right of subrogation until *Patriot* performs all of its obligations and covenants.  The paragraph does *not* provide "until Patriot *and the Guarantors* perform all of *their* obligations and covenants".  Thus, the paragraph as written makes a distinction between *Patriot's obligations and covenants* and the *Defendants' obligations.*  The paragraph addresses the Defendants' obligations to satisfy Patriot's monetary obligations to Fidelity (leading to a right of subrogation) while limiting other obligations to Patriot.  If the guaranties were truly retroactive in nature, there would have been no reason to limit the Defendants' obligations under the Agency Agreement to only payment of Patriot's debt.  The Court concludes that the guaranties are not retroactive, but prospective, in nature and therefore were not effective until their execution on June 30, 2003.  Even if the guaranties imposed a fiduciary duty on the Defendants (which this Court believes is highly doubtful), the Defendants did not become fiduciaries until after the defalcation occurred; their debt owed to Fidelity does not survive discharge under §523(a)(4).

24.    Fidelity has not alleged that the language of the guaranties is ambiguous or that the Court should look beyond the four corners of the guaranties to discern its intent.  Without language within the four corners of the guaranties that Defendants expressly intended to create or assume a retroactive fiduciary relationship between Defendants and Fidelity, no such

fiduciary relationship can be construed. As executed on June 30, 2003, the guaranties did not establish any *ex post facto* fiduciary relationship between the Defendants and Fidelity.

25.     Even if the language of the guaranties was ambiguous, such ambiguities would be construed against Fidelity who drafted the guaranties.  "It is a cardinal rule of construction that a contract is construed most strongly against the party that prepares it."  *Wabash Ford Truck Sales, Inc. v. Ford Motor Company*, (1984), Ind.App., 472 N.E.2d 611, 614, *trans. denied.* "That is, ambiguities are to be strictly construed against the preparing party."  *English Coal Co. v. Durcholz*, (1981), Ind.App., 422 N.E.2d 302, *trans. denied*.

### D.  Bases to Find Liability Independent of the Guaranties

#### a.  Principal's Liability for Tortitious Acts

26.     Counsel for Fidelity clearly conceded in the August 9th hearing that there was no other independent basis upon which to find nondischargeability under §523(a)(4), or to establish a fiduciary duty on the part of the Defendants, other than the guaranties.  The Court has concluded that the guaranties created no such fiduciary duties for the Defendants before June 30, 2003, if such guaranties created any fiduciary duties at all.  Given the fact that the defalcation with respect to the funds occurred no later than February, 2003, with no fiduciary relationship in place *before* the defalcation occurred, the Defendants did not fall within the dischargeability exception under §523(a)(4).

27.    On page 6 of its amended proposed findings of fact and conclusions of law,

Fidelity states

> As an agent for Fidelity and as expressly set forth in the Agreement,
> Patriot owed a fiduciary duty to Fidelity, and such duty was
> breached when the funds were misappropriated

This fact was established in the District Court Judgment and the Court is in

agreement with it.  However, using the Agency Agreement and the District

Court Judgment as purported references, Fidelity makes the quantum leap

that

> Patriot's breach of its fiduciary duty to Fidelity was directly
> attributable to the Defendants' personal conduct while acting as
> principals of Patriot....[b]y virtue of Defendants' control of Patriot,
> Defendants owed a fiduciary duty to Patriot, and consequently,
> Fidelity...The Defendants' conduct resulted in a breach of their
> fiduciary duties.

(Amended findings, p. 6-7).

28.    What the District Court *did* find was that: (1) the Defendants were

employees of Patriot (Judgment, p. 2) and (2) they are "liable for Patriot's

breach pursuant to the Guarantees" (Judgment, p. 4).  Conspicuously

absent are any findings that Patriot's breach of its fiduciary duty to Fidelity

was directly caused by the Defendants' personal conduct, that the

Defendants "controlled" Patriot or that the Defendants breached *any*

fiduciary duties.

29,    Thus, although not argued in the August 9th hearing, Fidelity makes much

of the fact that the Defendants' personal conduct and degree of control

over Patriot should be the predominant factors that renders them

fiduciaries to Fidelity.  In this regard, Fidelity cites the Fourth Circuit case of

*In re Ellison*, 296 F.3d 266, (4th Cir. 2004), which originated from a West Virginia bankruptcy court.  *Ellison* dealt with a corporation (Sovereign) that, like Patriot here, entered into a trust arrangement with and became a fiduciary to a third party (ARC).  Like the Defendants here, the principals of Sovereign controlled Sovereign and personally guaranteed Sovereign's debt to ARC.  The lower court found that the principals "single handedly" caused Sovereign to breach its trust agreement with ARC.  Based on these facts, the majority In *Ellison* seemed to base their finding of nondischargeability under §523(a)(4) on the following (incorrect) syllogism: (1) under West Virginia law, the principals owed a fiduciary duty to Sovereign; (2) the principals breached their fiduciary duty to Sovereign by their tortitious conduct in causing Sovereign to breach its fiduciary duty to ARC; (3) principals can be held personally liable to a third party (ARC) for Sovereign's debt since they actually participated in the tortitious acts that gave rise to the debt; and (4) since it would be impossible to separate the principals' tortitious acts from Sovereign's defalcation while acting in a fiduciary capacity, the principals likewise became fiduciaries of ARC.

30.    Although the majority  acknowledged that by simply guaranteeing Sovereign's debt to ARC, "the Ellisons did not place themselves in a fiduciary relationship with ARC".  Id at 270, the Ellisons nonetheless by their tortitious conduct and degree of control were  "jointly and severally liable with [Sovereign] vis-a-vis ARC, quite apart from their personal guarantees".  296 F.3d at 271.

31.    In Judge Luttig's dissent in *Ellison*, which in the opinion of this Court, is the

better reasoned opinion, Judge Luttig observed that:

> Officers and shareholders are not vicariously liable for the fiduciary
> obligations of their corporation, even if they "control" a corporation's
> ability to satisfy those obligations, unless there is a reason to
> disregard the corporate form. Whether a court should 'pierce the
> corporate veil" is a question of state law, and no argument or
> evidence in the record suggests that the Ellisons operated
> [Sovereign] as a shell corporation, without observing the corporate
> forms, in an effort to defraud their creditors.  In the absence of these
> circumstances, the officers of a corporate fiduciary do not
> themselves become fiduciaries.

296 F.3d at 275.

32.    Judge Luttig further noted that neither the Ellisons' tortious conduct nor

their personal guaranties established a fiduciary duty on their part to ARC.

Their tortious conduct may have rendered them personally liable to ARC,

but this personal liability survived bankruptcy under §523(a)(4) only if the

Ellisons were found to be fiduciaries to ARC.  The dissent concluded:

> If a fiduciary duty to someone other than the creditor is sufficient to
> satisfy the "acting in a fiduciary capacity" requirement....then any
> creditor in bankruptcy can render his debt nondischargeable by
> characterizing the debtor's actions as "fraud or defalcation", so long
> as, at the time the debt accrued, the debtor owed a fiduciary duty to
> someone – anyone else.

*Id* at 276. [4]

---

[4] *Ellison* is also distinguishable from the case here in that the Ellisons executed the personal
guaranties at the same time as Sovereign entered into the trust agreement with ARC.  Any defalcation
that resulted in *Ellison*  was committed after the Ellisons executed the personal guaranties, unlike the case
here where the defalcation occurred before such point.   *Ellison* still holds that a principal's personal
guaranty of corporate debt is insufficient by itself to give rise to a fiduciary duty to a third party to whom the
corporation owes a fiduciary duty, and the other cases cited by Fidelity do not dispute this holding.  See, *In
re Interstate Agency, Inc.*, 760 F.2d 121, 125 (6th Cir. 1985) and  *In re Baird*, 114 B.R. 198, 204 (9th Cir.
B.A.P. 1990),( where nondischargeability under §523(a)(4) was found, in part, upon applicable state
statutes that created express trust obligations).

33.   There is yet another reason to question the majority's reasoning in *Ellison*. If it is the conduct that *gives rise* to the creation of fiduciary duty, as *Ellison* seems to hold, then the Ellisons could not have been fiduciaries under federal bankruptcy law since the fiduciary duty was created after the defalcation occurred.  Fiduciary duties created *ex maleficio* do not create a fiduciary duty for §523(a)(4) purposes.

34.   Here, there is nothing in the record to suggest that it was the Defendants tortitious conduct that led to Patriot's breach of fiduciary duty to Fidelity. Even if the District Court had made such a finding, such a finding still would not be sufficient to establish a fiduciary relationship between the Defendants and Fidelity.

35.   Having found no genuine issue of material fact exists which could establish that a fiduciary relationship existed between the Defendants and Fidelity as of the date the defalcation occurred creating the underlying debt, the Court concludes that the Defendants' personal debts owed to Fidelity are dischargeable under §523(a)(4).   Fidelity's motion for summary judgment is DENIED; the Defendant's motion for summary judgment is GRANTED.

### III.  Summary Judgment

There is no genuine issue of material fact that the Defendants are not "fiduciaries" for §523(a)(4) purposes, and the Defendants are entitled to judgment as a matter of law. Therefore, the debt owed to Fidelity is DISCHARGEABLE.

# # #

Distribution:

Timothy Abeska, Attorney for Fidelity
Kjell Engebretsen, Attorney for the Defendants
Nancy J. Gargula, United States Trustee